[No. 27559.  Department Two.  June 14, 1940.]

LEE MARICH, *Appellant,* v. OLE B. MOE *et al.,* *Respondents.*[1]

[1]Reported in 103 P. (2d) 362.

*Harold A. Seering* and *Poe, Falknor, Emory & Howe,* for appellant.

*Bruce Bartley* and *George Bovingdon,* for respondents.

JEFFERS, J.—This controversy grows out of a collision which occurred on the North Shore road, near Lake Quinault, on December 27, 1937, between a logging truck and trailer belonging to plaintiff, Lee Marich, and being operated at the time of the accident by Clarence Stoken, and a logging truck and trailer owned by defendants Ole B. Moe and wife, and being operated by defendant Robert Keiser.

The complaint alleged that the driver of defendants' truck was negligent in failing to turn seasonably to the right upon meeting plaintiff's truck; in driving to the left of the center of the highway; and in failing to yield one-half of the highway to plaintiff's truck and trailer. Judgment was asked for damage to the truck occasioned by the collision, and for the loss of use of the truck while it was being repaired. The answer of defendants denied the allegations of negligence and alleged affirmatively contributory negligence on the part of the driver of plaintiff's truck, and also alleged that, at and before the time of the accident, in the locality in which the accident occurred, there was a well established custom, which was known to the driver of plaintiff's truck, to the effect that on narrow roads loaded trucks had the right of way over unloaded trucks. The cause was tried to the court without a jury.

There were no witnesses to the accident other than Clarence Stoken, the driver of plaintiff's truck, and Robert Keiser, the driver of defendants' truck. In view of the fact that the trial court held this was an

unavoidable accident, and that neither party could recover, we deem it necessary to set out quite fully the testimony of the drivers of the trucks.

Clarence Stoken, driver of plaintiff's truck, testified substantially as follows: That the North Shore road is a good gravel county highway, having an average width of about twenty feet; that, at the time of the accident, he was travelling northeast, empty, going back for another load of logs; that, as he approached the scene of the accident, he was driving about twenty-five miles an hour; that there was a cut bank on his right, and a sharp curve going the way he was proceeding, to his right; that, when he first saw defendants' truck, it was coming into the curve about thirty or forty feet away; that he could see only about thirty or forty feet around the curve; that he figured defendants' truck, which was loaded, was traveling about twenty-five miles an hour; that plaintiff's truck was on its proper side of the road; that defendants' truck was out from its side of the road in the center some distance; that the witness cut right into the bank on his side and applied his trailer brakes, and that Keiser cut over to his right; that the rear left wheel of plaintiff's truck and the left front wheel of defendants' trailer came together; that, at the time of the collision, plaintiff's truck was against the cut bank on the right; that the witness applied his trailer brakes because they act more slowly than the brakes on the truck, and if he had applied his truck brakes, the trailer would have tended to push the back end of his truck out into the road; that, after the collision, he released his brakes, and his truck and trailer coasted forward about one hundred feet.

This witness further testified that his truck and trailer were about forty-eight feet six inches long, and that the truck was eight feet wide, and the trailer

about seven feet six inches; that he had passed logging trucks before at this point, and had no difficulty in so doing. He then indicated on the map (defendants' exhibit 1) the point where the collision occurred. The witness was further interrogated as follows:

"Q. When you first saw this truck driven by Keiser can you fix its position in the road, that is, how far was he from his right side? A. Well, he was about four or five feet, I guess, from his side of the road, from the shoulder of the road. Q. That is what part of his car? A. His right side. Q. And at that time where were you? A. I was coming on my side of the road. Q. How close to your side? A. Within a foot of the shoulder. Q. What did you do then? A. When I first saw him? Q. Yes. A. I put on the trailer brake and cut over further. Q. What did he do? A. Well, he cut to his side a little bit and then straightened her back to keep from running off the road. Q. Did he get entirely to his side of the road? A. The front of the truck did, possibly a foot from the shoulder. I suppose that is as close as he dared to go. Q. Did the trailer get over onto the side of the road? A. No, he cut back again, that would leave the trailer in the road. Q. At the time of the impact was any part of his equipment to the left of the center of the road? A. His trailer must have been to the left of the center of the road, yes. Q. Could you say how much? MR. BARTLEY: Unless he saw it. Did you see—I think that should be shown. He said, 'It must have been,' I think that is a conclusion from some other—THE WITNESS: (interrupting) Well, we hit there. I was to my side of the bank, so it must have been to the left of the center of the road. MR. BARTLEY: I object to that, it is a conclusion that he was on his side of the road at the time the collision occurred. He is testifying from that as to where the other truck was. THE COURT: Yes, it is a conclusion. It is a conclusion drawn by him from the facts. Q. Can you say, Clarence, whether his trailer or truck were to the left of the center of the road from what you saw there? A. I couldn't say definitely, no, without a conclusion as the Judge said."

This witness further testified the road was about seventeen feet six inches wide at the place where the collision occurred.

Robert Keiser, driver of defendants' truck, testified as follows: That the total weight of his truck and trailer, loaded, was about twenty-five tons; that the outside width of his truck was seven feet four inches, and his trailer was seven feet wide; that, just before the accident, he was coming up the grade at about twenty-two or twenty-three miles per hour, and his front wheels were about a foot from the edge of the road on his side, which would put the outside rear wheel of the truck about four inches from the shoulder; that he rounded the curve and saw Stoken, who was then about two hundred feet in front of him and down where the road was wider; that, when Stoken went by his cab, he (Keiser) thought there was plenty of room to pass, and that there was room; that he did not turn to the left other than as was necessary to follow the curve in the road; that he was driving just as close to the shoulder as he could get; that Stoken's cab passed his, and he never figured that there would be an accident, as there was plenty of room; that, on account of the logs in his load, he could not see what happened after Stoken passed his cab; that Stoken made no sign or signal of any kind as he passed, and the next thing he knew there was a crash.

This witness also marked on the map the place where he claimed the accident occurred, which was about one hundred fifty feet southeast from the place designated by Stoken.

Keiser further testified that, after the collision, he went back behind his truck, where he could see Stoken's truck, and that it was directly in the center of the road; that he then went back to where Stoken was.

Upon being asked what transpired then, the witness answered:

"The only remark I believe that was made, I spoke first; I said, 'Clarence I thought we had plenty of room there.' He said, 'So did I.' Outside of that I don't know of anything else that was said."

This witness further testified that, after the collision, the Stoken truck went about two hundred feet.

It is contended that it is admitted, as shown by the cross-examination of Keiser, that plaintiff's truck and trailer were at all times on the proper side of the road. We have carefully examined this record, and we are of the opinion that all Keiser testified to was that up to the time Stoken's cab passed his cab, Stoken was on his own side of the road.

It was also shown by competent testimony that, on a fifteen degree curve, such as the one at the scene of this accident, the trailer wheels on defendants' equipment follow right behind the truck wheels.

There was also testimony by Stoken and his two brothers that there were marks along the cut bank, which Stoken claimed were made by his truck when he went along the bank. However, it appears that two other trucks and trailers came up to the scene of the accident and passed both defendants' truck and trailer and plaintiff's truck and trailer on the right side, which would be along the bank where the marks testified to by Stoken and his brothers were. The drivers of the two trucks last above referred to testified they saw no marks, so, at most, there was a disputed question of fact here.

The trial court found, among other facts, that the left rear portion of plaintiff's truck collided with the left front wheel of defendants' trailer; that the front ends and cabs of the two vehicles passed each other, and that the rear portions of the trucks passed each

other; that, when the cabs and front portions of the vehicles passed each other, the defendants' vehicle was over as close as practicable to its own right-hand side of the road, and that, because of the weight of defendants' truck it would be impossible to turn it in the short space of time following the passing of the front ends of the vehicles.

The trial court concluded that the plaintiff did not sustain the burden of proving that, at the time the accident occurred, defendants' vehicle was on the wrong side of the road. The court further concluded that, immediately prior to the accident, both drivers exercised caution and care commensurate with the situation, and that the accident was unavoidable. Judgment was entered December 8, 1938, dismissing plaintiff's complaint and defendants' cross-complaint. Motion for judgment notwithstanding the court's decision, and for new trial, were made and denied, and this appeal by plaintiff followed.

Error is assigned upon the refusal of the court to enter judgment for plaintiff. It is agreed by both parties that the questions involved are of fact only.

The rule is so well established as to need no citation of authority, that this court will not reverse the trial court unless the evidence preponderates against the findings, or unless the judgment is not supported by the findings.

The trial court allowed testimony to be introduced relative to the custom hereinbefore referred to, and made a finding to the effect that there was such a custom, which was known to Stoken, and also concluded therefrom that, because of such custom, it was incumbent upon appellant's driver to exercise a greater degree of care in meeting respondents' loaded truck with his unloaded truck. The trial court also concluded that Stoken could and should have seen respondents' ve-

hicle while it was a sufficient distance away, and while appellant's vehicle was in a wider part of the road, in time to have stopped and avoided the accident. We doubt if there was any basis for the introduction of this custom herein. Assuming, but not deciding, that proof of such a custom might, under certain conditions, be admissible, in view of the fact that all the testimony was to the effect that both loaded and unloaded trucks passed without difficulty at this point, we do not think the question of custom is material herein. As shown by the testimony of the drivers of both trucks, they thought they had room to pass.

We are unable to agree with the trial court that, under the evidence herein, there was any duty cast upon the driver of appellant's truck to stop, or that, under the testimony, any negligence would be imputed to him because of his failure to stop. While the trial court made a finding relative to the custom above referred to, and entered a conclusion of law based thereon, this, however, became immaterial, in view of the fact that, in our opinion, the evidence does not preponderate against other findings from which the court could, and undoubtedly did, conclude that appellant had not sustained the burden of proving that, at the time of the accident, respondents' truck and trailer, or either of them, were on the wrong side of the road. Neither does it become material that the conclusions are inconsistent, if the findings support the judgment. *Gerhard v. Worrell,* 20 Wash. 492, 55 Pac. 625; *Bannister v. Cavanaugh,* 175 Wash. 451, 27 P. (2d) 695.

When all of the testimony is considered, we cannot say that the trial court was wrong in concluding, as it evidently did, that, it being apparent that respondents' truck wheels were on the right side of the road, only by conjecture could it be determined

that the trailer wheels were not also on the right side of the road. It is apparent, of course, that something happened after the cabs and wide portions of these trucks passed each other, which threw the rear wheel of appellant's truck and the front wheel of respondents' trailer together, but as we have said, what caused this to happen can only be arrived at by conjecture.

There were other points argued by the parties hereto, but we do not deem it necessary to make any further reference to them, as the real question to be determined is the one dealt with herein, namely: Were respondents' truck and trailer, or any part of this equipment, on the wrong side of the road at the time of the collision?

We are of the opinion that the evidence does not preponderate against the findings of the trial court relative to the position of respondents' truck and trailer. We are further of the opinion that such findings support the conclusion that appellant has failed to sustain the burden of proof; and also that such findings support the judgment of dismissal. In our opinion, it not appearing that, before the accident, respondents' driver was on the wrong side of the road, the burden did not shift to him to justify his position, and the cases cited by appellant to sustain his contention on this point have, therefore, no application.

The judgment is affirmed.

BLAKE, C. J., BEALS, and STEINERT, JJ., concur.