[No. 28324. Department One. December 1, 1941.]

JOHN SIEVERS, *Respondent*, v. ADELE SIEVERS, *et al.*, *Appellants.*[1]

[1]Reported in 119 P. (2d) 668.

*Coleman & Coleman, Thomas G. McCrea,* and *Gordon D. Eveland,* for appellants.

*J. L. Rucker,* for respondent.

MILLARD, J.—This mandamus action is a contest to determine ownership of certificate No. 252, representing one hundred shares of capital stock of a national bank. The action was instituted to compel First National Bank of Everett and Adele Sievers, as an individual and as executrix both of the estate of her deceased husband, Ed Sievers, and of the estate of her deceased mother, Clara Haase Paulsen, to invest plaintiff with indicium of title to one hundred shares of the capital stock of defendant bank.

Adele Sievers pleaded in bar that, for more than ten years prior to the commencement of this action, she owned, in her separate right, the shares of capital stock claimed by plaintiff, subject only to a loan in the

amount of ten thousand dollars owned by the estate of her deceased mother, to secure the payment of which loan the shares of capital stock were pledged and the loan was never paid. The cause was tried to the court, which entered findings of fact and conclusions of law in favor of plaintiff. Defendants have appealed from judgment in consonance therewith.

■ We have consistently adhered to the rule, which is applicable in the case at bar, that, in trials to the court, findings upon conflicting evidence will not be disturbed on appeal unless the evidence preponderates against the findings. In *Yesler v. Hochstettler*, 4 Wash. 349, 30 Pac. 398, we said:

"Where the testimony is conflicting, and especially where witnesses appeared in the lower court, we should give due weight to the opinion of the trial judge who saw and listened to the witnesses as his opinion is expressed in the judgment; because in such cases he has the clear advantage over us in judging the credibility of the statements made."

See, also, *Westfield v. Marble*, 103 Wash. 213, 173 Pac. 1090; *Weir v. School District No. 201*, 200 Wash. 172, 93 P. (2d) 308, 123 A. L. R. 1057; *Bohlke v. Wright*, 200 Wash. 374, 93 P. (2d) 321; and *Marich v. Moe*, 4 Wn. (2d) 343, 103 P. (2d) 362.

Cause No. 33303, to which we shall later refer, in the superior court for Snohomish county, and the cause now before us, were tried to the same superior court judge, who had been for many years well acquainted with the parties and witnesses in the two actions; hence, the trial court was in a better position than we to evaluate the testimony given.

The facts are summarized as follows: Ed Sievers, to whom appellant Adele Sievers was married January 28, 1903, owned, as his sole and separate property, a number of shares of capital stock of H. O. Seiffert Company, a domestic corporation, which was organized

by Ed Sievers prior to his marriage. All of Sievers' time and talents were devoted to the service of this company, which paid to him a salary of one hundred and fifty dollars monthly. That is, Adele Sievers and the wife of each of the stockholders of Seiffert company received from the company monthly a check in the amount of one hundred and fifty dollars, which money was expended for household needs. Ed Sievers' expenditures for household and other purposes were in excess of the salary paid to him, and those expenses he met from his separate funds.

From the earnings of Seiffert company, which were credited to his account by way of dividends, Sievers purchased, March 8, 1909, fifty shares of capital stock of First National Bank of Everett for a consideration of $10,750. He paid $3,750 by check of Seiffert company and gave his unsecured promissory note for $7,000, signed only by himself, covering the purchase price of the stock. With his own individual money, Sievers retired the note for $7,000; the community composed of himself and Adele Sievers did not contribute anything to the payment for the fifty shares of bank stock.

January 1, 1910, Sievers borrowed $1,758.23 from Mrs. Paulsen, his wife's mother, now deceased. Whether the last payment on the indebtedness of $7,000 was made by Sievers with this loan from Mrs. Paulsen is of no moment, as the indebtedness to Mrs. Paulsen was paid by Sievers from his credit balance, his separate property, in H. O. Seiffert Company.

In 1915, Sievers discontinued active participancy in the management of H. O. Seiffert Company and organized a domestic shingle brokerage corporation under the name of The Sievers Company. His mother-in-law, Clara Haase Paulsen, purchased one hundred shares of preferred stock of that company of the aggregate

par value of ten thousand dollars. Under an agreement, reading as follows, Sievers pledged his fifty shares of bank stock as security for payment of interest of eight per centum per annum to Mrs. Paulsen on the one hundred shares of preferred stock of The Sievers Company purchased by her, and in the event of liquidation of The Sievers Company the shares of bank stock were pledged as security for payment of the principal of ten thousand dollars paid by Mrs. Paulsen for the preferred stock:

"THIS AGREEMENT made this.................day of September A. D. 1915 by and between Clara Paulsen of Everett, Washington party of the first part, and Ed Sievers of the same place, party of the second part.

"WITNESSETH That Whereas the party of the first part has this day subscribed for One Hundred (100) shares of the preferred stock of The Sievers Company a corporation of Everett, Washington at the request of the party of the second part, and in which corporation the said party of the second part together with his wife own all of the common stock;

"AND WHEREAS the party of the second part is the owner of Fifty (50) shares of the capital stock of the First National Bank of Everett, a National Banking corporation of Everett, Washington represented by Certificate No. 24, which said certificate is hereto attached and endorsed in blank by the party of the second part.

"Now THEREFORE the party of the second part hereby deposits with said party of the first part the said certificate of stock in said First National Bank of Everett to secure to the party of the first part the annual dividend of eight per cent (8%) which it is provided in the organization and by-laws of the said The Sievers Company that said preferred stock shall draw as and when the same shall become due and also for the purpose of securing said party of the first part the repayment to her of the investment which she has made in said stock to-wit; the sum of Ten Thousand Dollars ($10,000.00) in case of the insolvency of said company and its liquidation and distribution of its assets among

its creditors. It being understood that no suit for the foreclosure of said lien upon said Bank stock shall be instituted until a period of sixty days shall have elapsed after the date of the default of payment of the interest upon said preferred stock.

"It is further expressly understood and agreed that the party of the second part shall have at any time the right to purchase the preferred stock in said The Sievers Company belonging to the party of the first part by the payment of its par value plus any accrued and unpaid dividends thereon, and upon such purchase the said certificate of stock in said bank shall be returned to the party of the second part.

"It is further understood and agreed that for the purpose of the mutual protection of the rights of both of the parties in and to said bank stock that this agreement together with said bank stock shall be deposited with Adele Paulsen Sievers and be by her held as Trustee for both parties in accordance with the terms of this agreement.

"It is further expressly understood and agreed that this agreement insofar as the pledge of said bank stock as security for the payment of such dividends and the return of such investment, is a personal one with the said party of the first part and in the event of her or her heirs, executors and administrators selling or disposing of said preferred stock in the Sievers Company that the purchaser thereof shall acquire no rights whatever in the said Bank stock for the purpose of security or any other purpose.

"This agreement shall inure to and become binding upon the respective heirs, executors and administrators of the parties hereto.

"IN WITNESS WHEREOF the parties hereto have hereunto set their hands the day and year in this instrument first above written.

> "MRS. CLARA PAULSEN
> "ED SIEVERS."

It will be observed that the pledge agreement quoted above provides that it is to be terminated upon the repurchase by Ed Sievers of the preferred stock purchased by his mother-in-law. On September 5, 1919,

as is disclosed by the endorsement upon the certificate representing the one hundred shares of preferred stock of The Sievers Company purchased by Mrs. Paulsen, the pledge agreement was terminated, as Mrs. Paulsen sold to Ed Sievers the one hundred shares of preferred stock in question. Over her signature is the following endorsement on the stock certificate:

"For value received I hereby sell, assign and transfer unto Ed Sievers all my right title and interest in 100 shares of the Preferred Stock of The Sievers Co. as represented by this Certificate."

In 1921, respondent's father, John Sievers, purchased from his brother, Ed Sievers, the latter's shares of stock in H. O. Seiffert Company—admittedly, these shares were Ed Sievers' separate property—for a consideration of fifty thousand dollars in cash, thirty-two thousand dollars in notes and assumption of Ed Sievers' indebtedness to the company. After indorsement of the check, which was in the amount of fifty thousand dollars, Ed Sievers handed same to his wife, who took the check to the bank the following day and deposited forty-seven thousand dollars to her credit; three thousand dollars were applied by Ed Sievers in payment of certain debts.

Appellant Adele Sievers assumes, as one of her positions in this contest, that her husband turned the check for fifty thousand dollars over to her as a gift, to be and become her sole and separate property. There is some testimony, which is in conflict with other evidence, that Ed Sievers remarked to one or more persons, and boasted to others, that he had given the fifty thousand dollars to his wife.

In April, 1921, about three months after Ed Sievers' sale of his shares of stock in H. O. Seiffert Company to his brother John and alleged gift of fifty thousand dollars by Ed Sievers to appellant Adele Sievers, Ed

Sievers became interested in Garner Shingle Company. He finally became owner of practically all of the capital stock of that company. From May 23, 1922, to January 31, 1927, there is evidence that appellant Adele Sievers owned thirty-five shares of the capital stock of the Garner Shingle Company.

In 1923, the First National Bank of Everett declared a one hundred per cent stock dividend. A certificate representing an additional fifty shares of the stock of the bank was issued to Ed Sievers, making his total holding, *as separate* property, one hundred shares of bank stock.

January 31, 1927, the two certificates representing an aggregate of one hundred shares of capital stock of the First National Bank of Everett were canceled, and certificate No. 252 for one hundred shares in lieu thereof was issued by the bank to appellant Adele Sievers. That certificate stands on the books of the bank in the name of Adele Sievers, and all dividends declared by the bank on the one hundred shares of stock since January 31, 1927, have been paid to her.

Adele Sievers' explanation of the assignment of the bank stock to her by her husband is that, with full knowledge of decedent John Sievers, father of respondent, she turned over to Ed Sievers the indebtedness which she held against Garner Shingle Company, including certain promissory notes and shares of stock in the shingle company owned by her, and he, in turn, assigned to her the one hundred shares of bank stock owned by him subject to the pledge to decedent Clara Haase Paulsen to secure payment to Mrs. Paulsen of ten thousand dollars which she paid for preferred shares of The Sievers Company, as recited above.

At the time of this claimed transfer of bank stock to Adele Sievers by her husband, the indebtedness of the latter to the bank was the greatest he ever owed

to that institution. Decedent John Sievers, father of respondent, was a guarantor of that separate indebtedness of Ed Sievers, which John Sievers and his estate were subsequently required to pay.

An action (cause No. 33303 in the superior court for Snohomish county) was instituted by Clara Sievers as executrix of the estate of John Sievers, deceased, against Ed Sievers and Adele Sievers for recovery of amount John Sievers was required to pay to First National Bank of Everett as guarantor of payment of Ed Sievers' indebtedness to that bank. In that cause, Adele Sievers and her husband testified, and at their request the court found, that Ed Sievers was the owner of Garner Shingle Company in his sole and separate capacity, in that the shares of stock of that corporation were purchased with proceeds of property owned by Ed Sievers prior to his marriage to Adele Sievers; that the transactions were in the interest of the advancement of the property interests which were the separate property interests of Ed Sievers; and that the transactions were not had with reference to community property of Ed Sievers and his wife. Judgment in conformity to the foregoing was entered July 18, 1935.

Clara Sievers, as executrix of the estate of her deceased husband, John Sievers, caused an order of sale and execution to issue, and certificate No. 252, representing one hundred shares of capital stock of First National Bank of Everett, was sold at sheriff's sale December 23, 1935. Clara Sievers was the successful bidder. She received a sheriff's bill of sale, which she assigned to her son (respondent), transferring to her all interest of Ed Sievers, in his separate capacity, in and to certificate No. 252 for one hundred shares of capital stock of First National Bank of Everett. Upon refusal of the bank to transfer to him on its books the one hundred shares of stock represented by the cer-

tificate until required to do so by court decree, respondent commenced this action to determine ownership of the stock in question, the trial of which cause resulted in his favor.

■ The evidence is clear that, until January 31, 1927, the subject matter of this controversy was separate property of Ed Sievers. Its status having been established prior to 1927 as separate property, the presumption that it is separate property would continue until that presumption was overcome by evidence; and the issues and profits of that separate property would be separate property.

It is the rule in this state that the status of property, whether real or personal, becomes fixed as of the date of its purchase or acquisition; and that the status, when once fixed, retains its character until changed by agreement of the parties or operation of law. Where property is acquired during marriage, the test of its separate or community character is whether it was acquired by community funds and community credit, or separate funds and the issues and profits thereof. Where separate funds have become so commingled with community funds as to make it impossible to trace the former or tell which are separate and which are community funds, all of the commingled funds belong to the community; this because of the presumption in favor of the community and the favor with which the law regards such property.

By statute (Rem. Rev. Stat., § 6890 [P. C. § 1432]) in this state, "rents, issues and profits," of separate property are separate property. So long as the property in question is either "rents, issues or profits" of separate property, it is separate by virtue of the statute, and the question ends. It is only when the property in question is produced by the efforts of the spouses, in some way aided by separate property, that there is any question.

■ Summarized, the rules which should be kept in mind, in determining whether separate property has, in fact, been changed from separate into community property, are: (1) The status of property, whether separate or community, is to be determined as of the date of its acquisition; (2) this rule is true with reference to personal property as well as with reference to real property; (3) if the property is once shown to have been separate property, the presumption is that it continues separate property until that presumption is overcome by evidence; (4) separate property continues to be separate property through all its changes and transitions, as long as it can be traced and identified; and (5) the rents, issues, and profits of separate property remain separate property. *In re Binge's Estate,* 5 Wn. (2d) 446, 105 P. (2d) 689. See, also, *Conley v. Moe,* 7 Wn. (2d) 355, 110 P. (2d) 172; and *Scott v. Currie,* 7 Wn. (2d) 301, 109 P. (2d) 526.

■ Counsel for appellant Adele Sievers contend that the fifty shares of bank stock purchased in 1909 and subsequent increase of the number of shares to one hundred, were community property. Another position taken by this appellant is that the shares of stock represented by certificate No. 252 were a gift to her from her husband. A third position is that in 1921 Ed Sievers gave to his wife, appellant Adele Sievers, as her separate property, fifty thousand dollars in cash derived by Ed Sievers from sale of his stock in Seiffert company to John Sievers, and that she made a loan or gave to her husband a large portion of those funds, which he invested in Garner Shingle Company; and that her husband paid that loan by the transfer or assignment to her of certificate No. 252, representing one hundred shares of bank stock. That is, the bank stock was transferred to Adele Sievers

by her husband in consideration of the cancellation by appellant of claims which she held against Garner Shingle Company and of conveyance by her to her husband of the shares of stock of the shingle company which had been issued in her name. A fourth position is that Adele Sievers is owner in her separate right of the one hundred shares of bank stock subject to a lien against those shares of stock in favor of Adele Sievers, as executrix of her mother's estate.

It was the view of the trial court, in which we concur, that the important transaction is that of January 31, 1927, when the shares of bank stock originally purchased in the name of Ed Sievers, with the increase of same represented by a stock certificate of earlier date, were assigned in writing upon their face by Ed Sievers to Adele Sievers and transferred to her upon the books of the bank. Then it was that the first claim of Adele Sievers individually had its origin. The evidence does not support any contention that appellant Adele Sievers had a community right as the wife of Ed Sievers. The trial court observed that, if he were to find that the bank stock in entirety or in part was ever community property, it would be necessary to make that finding in the face of testimony of Adele Sievers, and more weight and effect would have to be given to the presumption in favor of community property than to Adele Sievers' own words.

The position now of Adele Sievers that she purchased the bank stock from her husband by conveying to him her interest in the shingle company which she acquired with all or a part of the fifty thousand dollars given to her by her husband in 1921, is inconsistent with the position of herself and husband in cause No. 33303 that all of the interest in Garner Shingle Company belonged to Ed Sievers in his separate capacity. She is concluded by the judgment, from which no appeal was taken, in that cause.

In cause No. 33303, it was adjudicated that all interest of Ed Sievers in Garner Shingle Company was the separate property of Ed Sievers both prior and subsequent to the assignment of the bank stock, and Adele Sievers may not be heard to contend otherwise. As the Garner Shingle Company stock was Ed Sievers' separate property before and after 1927, the claim that Sievers acquired it by purchase with the bank stock defeats the claim that the bank stock was community property. Property purchased with community funds becomes community property, and property acquired with separate funds becomes separate property.

The position that the bank stock belongs to the Paulsen estate under a pledge to secure the payment of dividends on preferred stock of The Sievers Company, standing in the name of Mrs. Paulsen, or to secure payment of the principal in event of liquidation of the company, is untenable.

The pledge agreement, quoted above, was personal between Mrs. Paulsen and Ed Sievers, and terminated in the event of disposal of The Sievers Company preferred stock by Mrs. Paulsen, the purchaser thereunder acquiring no rights under the pledge agreement. The fifty shares of First National Bank stock which Ed Sievers then owned in his separate capacity were pledged to Clara Paulsen as security for payment of interest on The Sievers Company preferred stock and in the event of liquidation to secure payment to her of the par value of that stock. The preferred stock was sold back to Ed Sievers September 5, 1919, as shown by the endorsement on the stock certificate which terminated Mrs. Paulsen's interest in The Sievers Company, and, of course, canceled the pledge agreement.

A note dated October 1, 1919, in the amount of ten thousand dollars, payable on or before two years after date to the order of Mrs. Clara Paulsen over the

signature of "Adele Paulsen Sievers" as maker, was introduced in evidence, but it can not be utilized as a basis for a claimed novation. This note shows on its face that it was executed subsequent to termination of the pledge agreement and more than seven years prior to the claimed transfer of the shares of bank stock from Ed Sievers to Adele Sievers.

Counsel for appellant Adele Sievers argue that, as the statute of limitations would have commenced to run as against Ed Sievers on January 31, 1927, it commenced to run as against respondent on the same date. John Sievers' liability was contingent, and, if Ed Sievers had at any time paid the loan which John Sievers later was required to pay, respondent's cause of action would never have come into being. A cause of action even against Ed Sievers could not mature until John Sievers was required to pay the debt.

On January 31, 1927, John Sievers was contingently liable upon his guaranty of the notes of the Garner Shingle Company endorsed by Ed Sievers. If the shingle company failed to pay its notes and if John Sievers was required to pay them upon his guaranty, he would have had a cause of action against Ed Sievers upon his endorsement. The cause of action to set aside the transfer of stock to appellant January 31, 1927, did not come into being until judgment was obtained on the debt; that is, this cause of action did not arise until judgment was entered in cause No. 33303.

The original certificate for fifty shares of bank stock was never community property of Adele Sievers and Ed Sievers. That bank stock and the increase thereof have at all times been separate property of Ed Sievers. January 31, 1927—when certificate No. 252 was transferred by Ed Sievers to Adele Sievers—John Sievers was a contingent creditor of Ed Sievers, who was then

insolvent. Adele Sievers paid no consideration for the bank stock, as no valid gift was made to her of the forty-seven thousand dollars it is contended she used to purchase the bank stock from her husband; hence, under the facts, John Sievers could in his lifetime, by appropriate action, have set aside the transfer, as could his estate after his death, January 31, 1927, of the bank stock by Ed Sievers to Adele Sievers. The argument of counsel for Adele Sievers that the three year statute of limitations applied because more than three years elapsed after John Sievers had knowledge that Adele Sievers claimed to be the sole and exclusive owner of the bank stock is, we repeat, without merit.

The certificate is not subject to the pledge lien to the Paulsen estate, as it was released therefrom.

We have considered other questions raised and find them without substantial merit.

The judgment is affirmed.

ROBINSON, C. J., MAIN, STEINERT, and DRIVER, JJ., concur.