[No. 20671–1–I.   Division One.   September 12, 1988.]

WESTERN WASHINGTON LABORERS–EMPLOYERS HEALTH & SECURITY TRUST FUND, ET AL, *Appellants,* v. HAROLD JORDAN COMPANY, INC., ET AL, *Respondents.*

*Kirk McKenzie* and *Donaldson & Kiel,* for appellants.

*James H. Allendoerfer* and *Allendoerfer & Keithly,* for respondents.

WEBSTER, J.—Western Washington Laborers–Employers Health & Security Trust Fund, Western Washington Laborers–Employers Pension Trust Fund, Western Washington Laborers–Employers Training Trust Fund, Western Washington Laborers Vacation Savings Trust Fund (Trusts) appeal from adverse judgments in favor of Harold Jordan, Inc. (HJI), HJI's president and sole shareholder Harold Jordan, and Jordan's marital community. The Trusts contend that the trial court erred (1) when it granted summary judgment to the respondents on the Trusts' claim of fraudulent conveyance and (2) when, after a trial, the trial court found in favor of the respondents on the Trusts' claim of corporate disregard and successor liability.

## FACTS

Pearson Asphalt Paving Ltd., doing business as Marysville Paving Company (Pearson), was incorporated in September 1969. During its existence, Jordan was its principal

shareholder. HJI was incorporated in 1978 by Jordan, who has remained its sole shareholder. Pearson and HJI were closely related from an economic standpoint because HJI manufactured the asphalt used by Pearson in its asphalt paving operation. In 1980, Pearson began experiencing financial difficulty. Nevertheless, HJI continued to supply Pearson with asphalt because Pearson's economic health was important to the continued vitality of HJI.

Pearson entered into a contract with the Trusts in 1974 for the payment of employee benefits; however, from 1977 through December 1980, Pearson failed to make the required contributions to the fund. In 1981, the Trusts notified Pearson of alleged delinquencies in the amount of $40,654 plus liquidated damages and interest. The parties then entered into negotiations concerning the Trusts' claim.

On June 1, 1982, Pearson signed a promissory note in favor of HJI for the balance owed on Pearson's delinquent account with HJI. At the time, HJI was Pearson's only major unsecured creditor. The note was secured with a U.C.C. lien against all Pearson assets, and HJI properly filed the U.C.C. financing statement on June 7, 1982.

Despite previous discussions to settle the Trusts' claim for about $10,000, the Trusts filed a lawsuit in September 1982 against Pearson, HJI, and Jordan concerning the claim. When the suit came to trial in May 1985, the court orally ruled in favor of the Trusts against Pearson.

Meanwhile, HJI determined that Pearson had neither made sufficient payments on the note nor satisfactory improvement in its financial condition. Thus, on June 1, shortly after the trial court's oral ruling on the Trusts' claim, HJI served Pearson with a notice demanding payment of the delinquent balance on the note. On June 15, HJI foreclosed on the U.C.C. lien, taking physical possession of all Pearson assets (subject to a large priority lien of Sea–First Bank). The value of the assets at the time of the foreclosure was substantially less than the value of Pearson's delinquent account.

On July 1, Pearson ceased doing business and assigned all remaining accounts receivable to HJI pursuant to the U.C.C. lien (subject to the liens of Sea–First and several tax authorities). Two days later, the Trusts obtained the written judgment against Pearson in the amount of about $78,000.

Since that time, HJI has operated the assets as a paving company in order to generate enough income to pay off Pearson's priority secured creditors. However, HJI did not make any payments to Pearson's other creditors nor did it operate under the name of "Pearson" or the trade name "Marysville Paving Company." HJI has diligently attempted to sell the equipment and vehicles in order to liquidate the large Pearson account receivable.

On October 22, the Trusts commenced the instant cause of action, alleging that a fraudulent conveyance had been made and that the doctrine of corporate disregard applied. Both parties moved for summary judgment. With respect to the fraudulent conveyance claim, the trial court granted summary judgment to the respondents on the ground that the claim was barred by the statute of limitations. After a bench trial, the trial court dismissed the corporate disregard claim.

## FRAUDULENT CONVEYANCE

We first address whether the trial court correctly granted summary judgment on the ground that the statute of limitations barred the Trusts' fraudulent conveyance claim. The statute of limitations for this claim is 3 years as provided in RCW 4.16.080(4). *See Strong v. Clark,* 56 Wn.2d 230, 232, 352 P.2d 183 (1960). The parties here disagree on which event triggered the running of the statute.

A fraud action accrues when the aggrieved party actually discovers, or in the exercise of due diligence could have discovered, the facts constituting the fraud. *See* RCW 4.16.080(4); *Strong,* at 232. In *Strong,* a trustee in bankruptcy brought an action to set aside a deed under the Fraudulent Conveyance Act (Act). *Strong,* at 231–32. The

court held that when the facts upon which the fraud is predicated are contained in a written instrument which is placed on public record, the aggrieved party receives constructive notice of its contents. Thus, the statute of limitations begins to run from the date of the recording of the instrument. *Strong*, at 232.

We conclude that the filing of the U.C.C. financing statement in this case had the same effect. A properly filed financing statement gives notice to the world that designated parties have entered into a secured transaction covering described collateral. *Hobart Corp. v. North Cent. Credit Servs.*, 29 Wn. App. 302, 305, 628 P.2d 842 (1981). Like a recorded deed, the statement invites further inquiry by one reading it. We, therefore, hold that when the statement was filed by HJI, the statute of limitations began to run against the Trusts' fraudulent conveyance claim. Having brought suit more than 3 years after the filing, the Trusts may not complain that the trial court's dismissal of that claim is erroneous.

The Trusts have argued that the statute of limitations did not run until the claim litigated in the first suit was actually reduced to judgment. We disagree. The Act gives a cause of action to a party despite the fact that the party's claim has not matured. *See* former RCW 19.40.100.[1] Former RCW 19.40.100 is universally held to have abrogated the rule whereby a judgment establishing the debt was an essential prerequisite to equitable relief. 37 Am. Jur. 2d *Fraudulent Conveyances* § 174 (1968). Moreover, the Act provides that a creditor is a person "having any claim, whether matured . . . or contingent" and that a debt

---

[1]Former RCW 19.40.100 provides:

"Rights of creditors whose claims have not matured. . . . Where a conveyance made or obligation incurred is fraudulent as to a creditor whose claim has not matured he may proceed in a court of competent jurisdiction against any person against whom he could have proceeded had his claim matured, and the court may,

"(1) Restrain the defendant from disposing of his property,

"(2) Appoint a receiver to take charge of the property,

"(3) Set aside the conveyance or annul the obligation, or

"(4) Make any order which the circumstances of the case may require."

includes "any legal liability, whether matured . . . or contingent." Former RCW 19.40.010. The cases cited by the Trusts dealing with contingent claims are, therefore, inapposite. *See Sievers v. Sievers,* 11 Wn.2d 446, 119 P.2d 668 (1941).

### CORPORATE DISREGARD

■ We next examine whether the trial court erred when it determined that neither HJI nor Jordan was liable to the Trusts based on a corporate disregard theory. The separate existence of a corporation is not disregarded unless the corporate form was intentionally used to violate or evade a duty and, then, only if disregard is "'necessary and required to prevent unjustified loss to the injured party.'" *Meisel v. M & N Modern Hydraulic Press Co.,* 97 Wn.2d 403, 410, 645 P.2d 689 (1982); *Morgan v. Burks,* 93 Wn.2d 580, 585, 611 P.2d 751 (1980); *see* Harris, *Washington's Doctrine of Corporate Disregard,* 56 Wash. L. Rev. 253, 258 (1981).

The abuse of corporate form typically involves "fraud, misrepresentation, or some form of manipulation of the corporation to the stockholder's benefit and creditor's detriment." *Truckweld Equip. Co. v. Olson,* 26 Wn. App. 638, 645, 618 P.2d 1017 (1980). The Trusts contend that HJI's decision to call the note due and foreclose on the U.C.C. lien, knowing that the Trusts would have a judgment against Pearson in the near future, constituted an abuse of corporate form.

We disagree. The separate existence of a corporation should not be disregarded solely because its assets are not sufficient to discharge its obligations. *Morgan,* at 589. In addition, Jordan's ownership of stock in both Pearson and HJI would not justify disregarding separate corporate entities unless a fraud was being worked upon a third party. *Rena–Ware Distribs., Inc. v. State,* 77 Wn.2d 514, 518, 463 P.2d 622 (1970); *see also J.I. Case Credit Corp. v. Stark,* 64 Wn.2d 470, 475, 392 P.2d 215 (1964); *McCurdy v. Spokane Western Power & Traction Co.,* 174 Wash. 470, 24 P.2d 1075 (1933). We find no evidence of fraud in this case.

In order to find that two corporate entities should be treated as one, it must appear that the one so dominates the other as to make the other a mere tool and that their funds and property interests are commingled. *McCurdy*, at 496. Yet, the trial court found (1) that HJI and Pearson meticulously observed the accounting and legal formalities of maintaining their independent corporate existences; (2) that all business transactions between the two companies were fully documented and based on fair consideration; and (3) that there was no commingling of assets or liabilities, no cross ownership between the corporations, and no evidence of under capitalization of either corporation. No assignment of error was made to these findings; as a result, they become the established facts on appeal. *Davis v. Department of Labor & Indus.*, 94 Wn.2d 119, 123, 615 P.2d 1279 (1980).

One corporation's grant of credit to the other, without more, is not grounds for applying the doctrine. *See Sommer v. Yakima Motor Coach Co.*, 174 Wash. 638, 653, 26 P.2d 92 (1933). The fact that one person dominates both corporations is immaterial if the domination was exerted upon each as a separate concern. *McCurdy*, at 496–97. In another finding to which no error has been assigned, the trial court noted that Pearson's signing of the note in favor of HJI was consistent with prudent business practices and justified by the circumstances then prevailing. In addition, conclusion of law 3 states that Pearson and HJI were not the alter egos of one another. No error having been assigned to this conclusion, it is not subject to review. *Salstrom's Vehicles, Inc. v. Department of Motor Vehicles*, 87 Wn.2d 686, 690, 555 P.2d 1361 (1976). For these reasons, we conclude that the trial court correctly dismissed the claim.

## SUCCESSOR CORPORATION

Last, we address the Trusts' argument that HJI was liable on a successor corporation theory. While the results of "successor liability" and "corporate disregard" theories are often the same, the inquiries are conceptually distinct.

*Meisel,* at 409; Harris, at 253 & n.3. Generally, a purchasing corporation does not assume the liabilities of its predecessor unless (1) the purchaser expressly or impliedly agrees to assume liability; (2) the purchaser is a de facto consolidation or merger; (3) the purchaser is a mere continuation of the seller; or (4) the transfer of assets is for the fraudulent purpose of escaping liability. *Meisel,* at 405; *Uni–Com Northwest, Ltd. v. Argus Pub'g Co.,* 47 Wn. App. 787, 801, 737 P.2d 304, *review denied,* 108 Wn.2d 1032 (1987).

The Trusts argue that HJI was the mere continuation of Pearson. One crucial factor in a "continuation" is the common identity of the officers, directors, and stockholders in the selling and purchasing companies. *Cashar v. Redford,* 28 Wn. App. 394, 397, 624 P.2d 194 (1981). Another factor is the sufficiency of consideration running to the seller corporation in light of the assets sold. *Cashar,* at 397. While the first *Cashar* factor is met here, the second one is not. The evidence shows that in 1982, when the note and the security for the note were given, the net value of the assets secured was roughly equal to the note.

Having found that the Trusts' arguments are without merit, we affirm.

WILLIAMS and GROSSE, JJ., concur.

Reconsideration denied October 10, 1988.