61 P.3d 1094 (2002)
148 Wash.2d 319
ONE PACIFIC TOWERS HOMEOWNERS' ASSOCIATION; Janet Abrams, an individual; Daniel H. Anderson and Helen M. Anderson, husband and wife; Mark Baerwaldt, an individual; Thomas V. Giddens, Jr., as personal representative for the Thomas V. Giddens, Jr. Trust; Kenneth Hayes, an individual; Michael Montgomery, an individual; Monique Wendt, an individual; Michael and Theresa O'Connell, husband and wife; Sherry Samuelson, an individual; Jon Staenberg, an individual; Jeffrey Swanson, an individual; Lawrence N. Taubman, an individual; Bradford C. Walker and Lisa M. Walker, husband and wife; and Wayne Willich and Christine Willich, husband and wife, Petitioners,
v.
HAL REAL ESTATE INVESTMENTS, INC., a Washington corporation; OPT Holdings, Inc., a Washington corporation; OPT II, Inc., a Washington corporation; OPT III, Inc., a Washington corporation; OPT IV, Inc., a Washington corporation; OPT V, Inc., a Washington corporation; OPT VI, Inc., a Washington corporation; OPT VII, Inc., a Washington corporation; Paul Manheim and Vivienne Manheim, husband and wife; Hal Real Estate Investments, N.V., a Netherlands Antilles corporation; Hal Holding N.V., a Netherlands Antilles corporation; and Hal Trust, a Bermuda trust, Respondents.
No. 72087-8.
Supreme Court of Washington, En Banc.
Argued October 17, 2002.
Decided December 19, 2002.
*1096 Louis D. Peterson, Michael R. Scott, Mark McPherson, Hillis Clark Martin & Peterson, Seattle, for Petitioners.
Arthur W. Harrigan, Jr., Timothy G. Leyh, Katherine S. Kennedy, Danielson Harrigan & Tollefson, Seattle, for Respondents.
*1095 BRIDGE, J.
HAL Real Estate Investments Inc. (HAL) formed seven subsidiary companies, OPT Holdings and OPT II through VII (OPT entities), to accomplish the purchase and sale of 30 condominium units in a building developed and constructed by another company. Some of the subsequent consumer purchasers and the Homeowners' Association (Owners) brought suit because they did not receive sales documentation to which they felt they were entitled under the Washington Condominium Act (Act), chapter 64.34 RCW. We hold that the OPT entities were "declarants" under the Act and were therefore obligated to provide subsequent purchasers with "Public Offering Statements" (POSs) rather than "Resale Certificates." We also hold that HAL is a "declarant" under the Act because it "act[ed] in concert" with the OPT entities. RCW 64.34.020(13).

I

FACTS
One Pacific Towers is a 75-unit luxury condominium complex located at First and Virginia in downtown Seattle. The complex was originally developed and built by OPT-1 Limited Partnership (Limited Partnership), whose general partner was Vyzis Residential Properties, Inc. Vyzis was the original declarant[1] of the condominium project.
Upon the death of Basil Vyzis, the principal of Vyzis Residential Properties, a representative of his estate contacted HAL to see if it would be interested in purchasing the remaining 34 unsold units, the parking garage, and the remaining unleased commercial unit. HAL formed a holding corporation, OPT Holdings, Inc., to implement the purchase. OPT Holdings then formed six subsidiaries, OPT II through OPT VII, each of which was to purchase and resell five of the condominium units.[2] OPT Holdings was to purchase the commercial unit and the parking garage. A letter from HAL to the Limited Partnership states that the reason for dividing the purchase of the different portions of the condominium property between various entities was to "avoid incurring `dealer' liability under the condominium statute."[3]
Paul Manheim is the sole officer and director of HAL, OPT Holdings, and the OPT entities. OPT Holdings is owned entirely by HAL. However, neither Manheim nor any of his corporate entities is related to the Limited Partnership, the original developer of One Pacific Towers. It is undisputed that the sale of the One Pacific Towers property to OPT Holdings and the OPT entities was an arm's length transaction.
Prior to the closing of the sales, the Limited Partnership and the OPT entities executed a supplemental agreement, which provided that the Limited Partnership would not transfer or exercise any "special declarant *1097 rights"[4] until authorized to do so by the OPT entities. The agreement further provided that the OPT entities could direct the Limited Partnership to assign to them the special declarant rights to maintain sales offices, erect signs, and operate model units. The Limited Partnership never formally transferred the special declarant rights to the OPT entities. Instead, the Limited Partnership transferred the rights directly to the Homeowners' Association at the direction of the OPT entities after the OPT entities had sold all but one of their units.
Despite the fact that the OPT entities never formally acquired the special declarant rights, they nevertheless maintained two model units in the complex, one of which contained a sales office. They also made various improvements to the lobby and common areas, hired a design firm to finish the interiors of the 30 units they had purchased, hired a marketing firm to advertise the units, and erected signs advertising the units for sale.
Upon the sale of each of the 30 units, the OPT entities provided resale certificates rather than POSs to the purchasers. If the seller is not a "declarant" or "dealer," a resale certificate suffices. RCW 64.34.425. However, if the seller of a condominium unit is a "declarant" or "dealer," the seller must provide a POS, which includes more detailed information than a resale certificate. RCW 64.34.405, RCW 64.34.410.[5]
Following the sale of all of the condominium units in 1997 and 1998, the OPT entities were dissolved. The total profit received was $4,744,415, a gain of 55.4 percent.
Alleging that the OPT entities and their parent companies were "declarants" and "dealers" under the Act, the Homeowners' Association and 12 individual condominium purchasers brought this action for statutory penalties based on the OPT entities' failure to provide POSs. If a declarant or dealer fails to deliver a POS, the purchaser can recover actual damages or a percentage of the unit's sale price. RCW 64.34.420(3). The Owners named the OPT entities, OPT Holdings, HAL Real Estate Investments, and Paul and Vivienne Manheim as defendants.
On cross motions for summary judgment, the trial court held that none of the defendants was a declarant or a dealer within the meaning of the Act. Thus, the court concluded that they had no obligation to provide the purchasers with POSs. The court also awarded $73,894 in attorney fees pursuant to RCW 64.34.455 and $125 in costs pursuant to RCW 4.84.010 to the defendants. The Owners appealed.
The Court of Appeals affirmed in part and reversed in part. One Pac. Towers Homeowners' Ass'n v. HAL Real Estate Invs. Inc., 108 Wash.App. 330, 335-36, 30 P.3d 504 (2001). The Court of Appeals agreed with the trial court that none of the defendants was a dealer within the meaning of the Act. Id. at 349, 30 P.3d 504. The court also declined to hold Manheim personally liable, finding that he was not a declarant because he did not succeed to special declarant rights. Id. at 346, 30 P.3d 504.[6] Following a motion for reconsideration by the Owners, the court also declined to find HAL liable as a declarant for "acting in concert" with the OPT entities. Wash. State Court of Appeals Order Denying Reconsideration & Modifying Opinion at 2, One Pac. Towers Homeowners' Ass'n v. HAL Real Estate Invs., Inc., 34 P.3d 834 (Wash.App.2001).
However, the Court of Appeals reversed the trial court's ruling on declarant liability, finding that the OPT entities were declarants because they had "succeeded to" the special declarant rights by exercising the rights, despite the fact that the Limited Partnership did not formally transfer the rights to them.
*1098 One Pac. Towers, 108 Wash.App. at 342, 30 P.3d 504. Because they were declarants, the OPT entities were obligated to provide POSs to the purchasers of the units. Id. at 345, 30 P.3d 504. The Court of Appeals also vacated the attorney fee award in favor of the defendants and remanded for a determination of an attorney fee award in favor of the Owners. Id. at 354, 30 P.3d 504. The court awarded the Owners their attorney fees on appeal. Id.
Both sides sought this court's review, which we granted at 146 Wash.2d 1008, 52 P.3d 519.

II

ANALYSIS
A. The OPT entities are "declarants" under the Act.
Under RCW 64.34.020(13), a "declarant" is "any person or group of persons acting in concert who (a) executes as declarant a declaration as defined in subsection (15) of this section, or (b) reserves or succeeds to any special declarant right under the declaration." Declarants are entitled to "special declarant rights," which include the right to make improvements, maintain sales offices and model units, erect signs advertising units for sale, and use easements through the common areas. RCW 64.34.020(29). Declarants must provide detailed POSs to subsequent purchasers of the units. RCW 64.34.405(1). Declarants also make certain express and implied warranties of quality regarding the construction of the condominium building and any subsequent improvements. RCW 64.34.443, RCW 64.34.445.
The Act does not specify how one "succeeds to" special declarant rights. HAL argues that the only way to become a "successor declarant" under the Act is by the formal recorded transfer of rights from the previous declarant to the successor. RCW 64.34.405(2) states that, "[a] declarant may transfer responsibility for preparation of all or a part of the public offering statement to a successor declarant pursuant to RCW 64.34.316...." In turn, RCW 64.34.316(1) states:
No special declarant right, as described in RCW 64.34.020(29), created or reserved under this chapter may be transferred except by an instrument evidencing the transfer executed by the declarant or the declarant's successor and the transferee [sic] is recorded in every county in which any portion of the condominium is located.
HAL asserts that, pursuant to the supplemental agreement, the Limited Partnership specifically withheld and did not subsequently transfer the special declarant rights to the OPT entities. Since the rights were never formally transferred to the OPT entities, they could not "succeed to" the rights.
The Owners argue that the OPT entities "succeeded to" special declarant rights because they exercised such rights by operating a sales office, maintaining two model units, employing a marketing firm to advertise the units, maintaining signs advertising units for sale, finishing the interiors of their units, and making improvements to the lobby and common areas. We agree.
To determine the meaning of "succeeds to," the Court of Appeals looked to dictionary definitions to determine the ordinary meaning of the phrase. One Pac. Towers, 108 Wash.App. at 341, 30 P.3d 504. Black's Law Dictionary defines a successor in interest as "[o]ne who follows another in ownership or control of property." BLACK'S LAW DICTIONARY 1283 (5th ed.1979). In terms of corporations, a successor is "another corporation which, through amalgamation, consolidation, or other legal succession, becomes invested with rights and assumes burdens of first corporation." Id. Webster's defines "succession" as follows:
[T]he change in legal relations by which one person comes into the enjoyment of or becomes responsible for one or more of the rights or liabilities of another person ...: the act or process of one person's taking the place of another in the enjoyment of or liability for his rights or duties or both.
WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2282 (1993).
The Court of Appeals held that the OPT entities succeeded to the special declarant rights because they had exclusive control *1099 over the rights and actually exercised them, despite the fact that the Limited Partnership had not formally transferred them. One Pac. Towers, 108 Wash.App. at 342, 30 P.3d 504. The court did not view a formal, recorded transfer as the sole means of succession to such rights, stating: "We are not persuaded that one who `succeeds to' special declarant rights may do so only by a transfer evidenced by a duly executed and recorded instrument." Id. at 343, 30 P.3d 504. The court found it significant that the Legislature defined a declarant as one who "succeeds to" special declarant rights rather than one to whom such rights are transferred. Id.
HAL argues that the Court of Appeals should have relied on the official comments to the Uniform Condominium Act rather than on dictionary definitions.[7] In Marina Cove Condominium Owners Ass'n v. Isabella Estates, 109 Wash.App. 230, 241, 34 P.3d 870 (2001), which was also decided under the Act, Division One of the Court of Appeals looked to the Uniform Act's official comments to determine the intent of the Legislature upon finding that the statute was ambiguous. Other state courts have also turned to the official comments to interpret their versions of the Uniform Act. See Griffith v. Faltz, 162 Ariz. 599, 600, 785 P.2d 119 (1990) ("Although this court is not bound by the interpretation of the Commissioners on Uniform State Laws, that interpretation is highly persuasive and should be adopted unless it is erroneous or contrary to the settled policy of the state."); State v. Rupe, 109 N.C.App. 601, 613-14, 428 S.E.2d 480 (1993) (stating that "[a]lthough the commentary is not binding when not enacted into law, where proper, it may be given substantial weight in discerning legislative intent."). HAL argues that the Court of Appeals should also have done so in this case.
Official Comment 3 to RCW 64.34.316(1) states:
[RCW 64.34.316(1)] provides that a successor in interest to a declarant may acquire the special rights of the declarant only by recording an instrument which reflects a transfer of those rights. This recordation requirement is important to determine the duration of the period of declarant control pursuant to RCW 64.34.308(4), as well as to place unit owners on notice of all persons entitled to exercise the special rights of a declarant under this Act. In addition, the declarant or successor declarant must furnish a copy of the recorded instrument to all unit owners.
WASHINGTON STATE COMMON INTEREST PROPERTY LAW 53 (1996) (hereinafter COMMON INTEREST) (emphasis added). The first sentence appears to prohibit successors from acquiring special declarant rights unless there is a recorded transfer. However, the second sentence indicates the rationale for such a requirementto give notice to condominium owners. Thus, the recording requirement appears to be intended as a way to ensure that unit owners receive notice rather than as an exclusive means of acquiring special declarant rights. HAL nevertheless argues that this is more than simply a notice provision, stating that "the recorded transfer is a prerequisite to `succeeding to' the rights." HAL's Pet. for Discretionary Review at 13. HAL maintains that since the Limited Partnership never transferred the rights to the OPT entities, the OPT entities never acquired the rights, were not "declarants," and were therefore not required to provide POSs to the Owners.
However, HAL disregards another section of the comments which expressly conflicts with HAL's interpretation. In a section discussing the definition of "special declarant rights," the comments provide that "[a]ny person who possesses a special declarant right would be a `declarant,' including any who succeed under RCW 64.34.316 to any of those rights. Thus, the concept of special declarant rights triggers the imposition of obligations on those who possess the rights." COMMON INTEREST, Official Comment 14 to RCW 64.34.020, at 40 (emphasis added). Black's Law Dictionary defines "possess" as *1100 follows: "to have in one's actual and physical control; to have the exclusive detention and control of." BLACK'S, supra, at 1046. In this case, the supplemental agreement gave OPT Holdings and the OPT entities the ability to control the rights, as the Limited Partnership was forbidden to transfer them without their permission.
As the Court of Appeals noted, the comments are not part of the Act and they do not discuss the significance of the Legislature's use of "succeed to" as opposed to "transfer" in the definition of declarant. One Pac. Towers, 108 Wash.App. at 344, 30 P.3d 504. Also, as discussed above, the Act and its comments suggest that there are various methods for obtaining declarant status. One may acquire it by recording under RCW 64.34.316(1). COMMON INTEREST, Official Comment 3 to RCW 64.34.316, at 53. One can succeed to special declarant rights and therefore become a declarant under RCW 64.34.020(13). Or one can become a declarant by possessing special declarant rights under RCW 64.34.020(29). COMMON INTEREST, Official Comment 14 to RCW 64.34.020, at 40. Given the existence of these various methods in the Act and its comments, it is not at all evident that the Legislature intended for one of them to be the exclusive means of becoming a declarant.
Likewise, since the comments do not specifically define the meaning of "succeed to" and because they appear to provide several methods of acquiring declarant status, they do not resolve the ambiguity in the statute. When a statute fails to define a term, a court may rely on the ordinary meaning of the word as stated in a dictionary. Budget Rent A Car Corp. v. Dep't of Licensing, 144 Wash.2d 889, 899, 31 P.3d 1174 (2001). See also State v. Standifer, 110 Wash.2d 90, 93, 750 P.2d 258 (1988) (turning to the dictionary because "undertaking" was not defined in the statute). Furthermore, a court should not apply a mechanical definition but rather should interpret the meaning of terms in the context of the statute as a whole and consistently with the intent of the Legislature. City of Tacoma v. Taxpayers of City of Tacoma, 108 Wash.2d 679, 693, 743 P.2d 793 (1987).
HAL's recording requirement argument is inconsistent with the consumer protection features of the Act.[8] The Act as a whole contains a strong consumer protection flavor, including an entire section, Article 4, entitled "Protection of Condominium Purchasers." One of the reasons the Uniform Act was created was that there was a perceived need for additional consumer protection. 1 GARY A. POLIAKOFF, THE LAW OF CONDOMINIUM OPERATIONS § 1.11, at 23 (1988). The desire to provide more protection to condominium purchasers may have been a major factor in the legislature's decision to adopt the Act. 18 WILLIAM B. STOEBUCK, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS § 11.13, at 41 (1995). In addition, the comments indicate that the main purpose of requiring a POS is to protect consumers, stating that "[t]he best `consumer protection' that the law can provide to any purchaser is to ensure that such purchaser has an opportunity to acquire an understanding of the nature of the products which it is purchasing." COMMON INTEREST, OFFICIAL Comment 1 to RCW 64.34.410, at 58.
Allowing a successor to make use of special declarant rights without requiring compliance with a declarant's obligations would create a loophole in the consumer protection provisions of the Act. This would permit successor investor/developers to routinely structure their purchase agreements so as to formally negate a transfer of special declarant rights, while in fact exercising such rights after the purchase. In this way, a successor could avoid responsibility for providing POSs and warranties to condominium purchasers while still enjoying the benefits of being a declarant. Since one of the main purposes of the Act is to provide protection for condominium *1101 purchasers, we would ignore the intent of the legislature if we were to read the recording requirement of RCW 64.34.316(1) as the sole means of succeeding to special declarant rights and thereby becoming a declarant.
HAL argues that imposing declarant liability on investors that purchase condominium units for resale will inhibit investment in condominium projects if investors are not allowed to limit their liability for warranty obligations. "Business entities in this state must be able to legitimately structure transactions to avoid unwarranted and unintended liabilities." HAL's Pet. for Discretionary Review at 20. HAL also maintains that condominium investors who were not involved in the construction of the building may lack access to the information that must be included in a POS and that much of the information is not relevant upon resale.
We find these arguments unpersuasive. First, HAL's belief regarding the extent of successor declarants' liability for warranty claims is unfounded. HAL seems to believe that if the OPT entities are declarants, they will be liable for warranty claims relating to the original construction of One Pacific Towers, which was undertaken by the Limited Partnership. However, the Act does not impose such wide-reaching warranty liability on successor declarants. RCW 64.34.316(5)(b)(i) provides that a successor declarant is "subject to all obligations and liabilities imposed by this chapter ... on a declarant which relate to such successor's exercise or nonexercise of special declarant rights." (Emphasis added.) RCW 64.34.316(2)(a) further provides that: "A transferor is not relieved of any obligation or liability arising before the transfer and remains liable for warranty obligations imposed upon the transferor by this chapter." Thus, successor declarants such as the OPT entities are liable for improvements to the condominium building that they make in the course of exercising their special declarant rights. The original declarant, in this case the Limited Partnership, would nonetheless remain liable for the original construction of One Pacific Towers.[9]
Second, we do not believe the burden of providing POSs would be as great as HAL contends. Investors that purchase blocks of unsold units in a building, as HAL did, receive POSs from the original developers. HAL does not dispute that the OPT entities received POSs from the Limited Partnership in this case. We fail to see how a successor would lack the information to provide a POS when the successor itself receives a POS from the original developer. It is hardly burdensome to be asked to relay such a document, along with updated information on any improvements made to the building, to subsequent consumer purchasers.
HAL finally contends that even if the OPT entities did exercise special declarant rights, the statutory remedy would be the loss of those rights rather than a damages award. The Court of Appeals awarded the Owners damages under RCW 64.34.420(3) upon finding that the OPT entities were declarants who had failed to provide a POS as required. RCW 64.34.420(3) states:
If a person required to deliver a public offering statement pursuant to RCW 64.34.405(3) fails to provide a purchaser to whom a unit is conveyed with that public offering statement and all material amendments thereto as required by subsection (1) of this section, the purchaser is entitled to receive from that person an amount equal to the greater of (a) actual damages, or (b) ten percent of the sales price of the unit for a willful failure by the declarant or three percent of the sales price of the unit for any other failure.
HAL, in contrast, relies on the comments, which state: "The transfer by a declarant of all of its interest in a condominium project to a successor, without a concomitant transfer of the special rights of a declarant pursuant to this subsection, results in the automatic termination of such special declarant rights and of any period of declarant control." *1102 COMMON INTEREST, Official Comment 3 to RCW 64.34.316, at 53. Thus, HAL argues that the appropriate remedy is termination of the rights, not a damages award of a percentage of the sales price.
The Court of Appeals found that there was no reason to consider the remedies mutually exclusive. One Pac. Towers, 108 Wash.App. at 345, 30 P.3d 504. We agree. Because the monetary remedy is contained in the Act itself rather than in the comments, it is particularly unlikely that the legislature intended to provide the termination of the rights as an exclusive remedy. Furthermore, in a case such as this one, the termination of special declarant rights after the fact provides no remedy at all, as the OPT entities have long since been dissolved and have already benefited by the exercise of the rights to the fullest extent possible.
We hold that the OPT entities are declarants under the Act because they exercised the rights to which a declarant is entitled, despite the fact that there was no formal transfer of the rights. They were therefore required to provide POSs to the Owners and are liable for the statutory penalty for their failure to do so.
B. HAL is a "declarant" under the Act.
The definition of "declarant" includes "any person or group of persons acting in concert who ... succeeds to any special declarant right." RCW 64.34.020(13) (emphasis added). The Owners argue that HAL should be held liable as a declarant for "acting in concert" with the OPT entities because HAL controlled the actions of the OPT entities. We agree.
HAL argues that the "acting in concert" provision requires more than simply concerted action; rather, it requires concerted action by which all members of the group succeed to special declarant rights. Thus, HAL claims that, even if it acted with the OPT entities in acquiring the condominium units, it did not act together in succeeding to the special declarant rights. Only the OPT entities performed those actions that amount to an exercise of special declarant rights operating the model units and sales office and making improvements to the units and common area. HAL itself did not take any such actions. The Court of Appeals agreed, finding that HAL was not a declarant because it did not "succeed to" any special declarant rights.
The Court of Appeals' ruling reads the "acting in concert" language out of the statute by requiring that a person or entity succeed directly to special declarant rights in order to be characterized as a declarant. Under this interpretation, there would be no reason for the Legislature to include the "acting in concert" provision because each declarant would have to "succeed to" special declarant rights directly rather than as one who "acts in concert." Statutes should be read in a manner such that all statutory language is given effect and no portions are superfluous. Davis v. Dep't of Licensing, 137 Wash.2d 957, 963, 977 P.2d 554 (1999) (quoting Whatcom County v. City of Bellingham, 128 Wash.2d 537, 546, 909 P.2d 1303 (1996)); Marina Cove, 109 Wash.App. at 241, 34 P.3d 870. We decline to accept the Court of Appeals' reasoning, as it renders the "acting in concert" language meaningless.
The question remains whether HAL did in fact "act in concert" with the OPT entities. The Act does not define the phrase, but another, arguably related, Washington statute does.[10] Title 82 RCW, governing excise tax on real estate sales, provides that "[p]ersons shall be treated as acting in concert when they have a relationship with each other such that one person influences or controls the actions of another through common ownership." RCW 82.45.010(2)(a). Black's Law Dictionary defines the phrase even more broadly, stating: "A person is deemed to act in concert when he acts with another to bring about some preconceived result." BLACK'S, supra, at 262.
In contrast to these definitions, HAL argues that concerted action requires unlawful conduct and neither it nor the OPT entities *1103 acted unlawfully here. HAL relies on a case interpreting the meaning of "acting in concert" under another statute, RCW 4.22.070(1)(a),[11] in which the Court of Appeals stated that "[a]ction in concert requires only that the actors consciously act together in an unlawful manner." Gilbert H. Moen Co. v. Island Steel Erectors, Inc., 75 Wash. App. 480, 487, 878 P.2d 1246 (1994) (emphasis added), rev'd on other grounds, 128 Wash.2d 745, 912 P.2d 472 (1996). However, Moen is distinguishable because it involved personal injury liability rather than real estate law.
Real estate cases that have addressed the question of what constitutes concerted activity have not required that the activity be unlawful. The Court of Appeals has found that there was concerted action when a listing agent and a selling agent collaborated to provide a buyer with inaccurate utilities and boundary information. Elliott v. Barnes, 32 Wash.App. 88, 91, 645 P.2d 1136 (1982). The Elliott court's test for concerted action makes no mention of unlawfulness: "[T]he following three elements must all exist: (1) A concert of action; (2) a unity of purpose or design; (3) two or more defendants working separately but to a common purpose and each acting with the knowledge and consent of the others." Id. Other state courts have also declined to require unlawfulness as an element of acting in concert in the real property context. For example, an Arizona court interpreting a real estate subdivision statute specifically found that unlawful activity was not a requirement of "acting in concert," stating that "the undefined phrase, `to act in concert,' means only that the parties must agree to act together to divide their land; they need not agree to violate the law." Siler v. Ariz. Dep't of Real Estate, 193 Ariz. 374, 972 P.2d 1010, 1016 (1998). Thus, in the real estate context, parties "act in concert" even if they do not purposefully engage in unlawful activities. We therefore decline to read the "acting in concert" language in RCW 64.34.020(13) as requiring unlawful conduct.
Under the definition of "acting in concert" provided in Title 82 RCW, the critical component is the control of the actions of one entity by another. Here, the actions of the OPT entities were controlled by HAL through their mutual officer and director, Paul Manheim. The OPT entities were created by and for the benefit of HAL so that HAL could avoid incurring liability as a dealer. They had no reason for existence other than to purchase and sell five condominiums each on behalf of HAL and were dissolved as soon as this was accomplished. HAL was the true beneficiary of the OPT entities' actions, as it received the almost five million dollar profit generated by the purchase and sale of the One Pacific Towers property.[12]
Because the OPT entities were controlled by HAL and the companies worked together toward a common goal, HAL and the OPT entities clearly acted in concert. We hold that HAL is therefore liable as a declarant under RCW 64.34.020(13) because it acted in concert with the OPT entities.

III

CONCLUSION
Washington's Condominium Act contains extensive protections for condominium consumers. We find that the various provisions of the Act should be construed with this purpose as controlling. An entity that makes use of the rights of a declarant cannot subsequently deny that it ever possessed those rights in order to evade its corresponding obligations. The legislature could not have intended that its consumer protection provisions would be so easily disregarded.
We affirm the Court of Appeals' ruling that the OPT entities were declarants because *1104 they exercised special declarant rights, despite the lack of a formal transfer of the rights. We reverse the Court of Appeals' ruling that HAL was not a declarant under the "acting in concert" provision of the Act. Because we find HAL liable as a declarant for acting in concert with the OPT entities, we find it unnecessary to address the issue of whether the corporate form should be disregarded and HAL should be held liable as a "dealer." We remand to the trial court for a determination of damages consistent with this opinion.
WE CONCUR: ALEXANDER, C.J., SMITH, JOHNSON, MADSEN, SANDERS, IRELAND, CHAMBERS, OWENS, JJ.
NOTES
[1] A condominium is created by executing a "declaration," which contains information about the development as required by the Act. RCW 64.34.020(15). The developers or owners who execute the declaration are "declarants," as are any subsequent owners who "succeed[ ]to" any special declarant rights. RCW 64.34.020(13).
[2] Originally, OPT Holdings formed seven subsidiaries, but one (OPT VIII) never purchased or sold any condominiums and is therefore not a party to this suit.
[3] Clerk's Papers (CP) at 549. RCW 64.34.020(12) defines a "dealer" as "a person who owns or has a right to acquire either six or more units in a condominium or fifty percent or more of the units in a condominium containing more than two units." Like a "declarant," a "dealer" must provide subsequent purchasers with a POS, RCW 64.34.405(3), and makes implied warranties of quality about the condominium construction. RCW 64.34.445.
[4] Pursuant to RCW 64.34.020(29), special declarant rights include, among other things, the right to complete improvements, exercise development rights, maintain sales offices, maintain model units, post signs advertising units for sale, and use easements through common areas in order to make improvements.
[5] A POS must include 38 different types of disclosures, including a brief description of construction warranties and a notice of the purchaser's right to cancel the purchase agreement. RCW 64.34.410(1).
[6] The Owners do not raise the issue of Manheim's personal liability in their briefs to this court. Therefore, we do not decide the issue.
[7] Our Act is a "substantial adoption of the major provisions of the Uniform Act." RCWA 64.34 at 310 (West 1994). See also Marina Cove Condo. Owners Ass'n v. Isabella Estates, 109 Wash.App. 230, 241, 34 P.3d 870 (2001) (stating that the Act "substantially conforms to the Uniform Condominium Act").
[8] The Washington Practice series states: "Large portions of Washington's version of the Uniform Condominium Act are devoted to its extensive requirements for the protection of original and secondary purchasers of condominium units. A number of these provisions are designed to prevent specific abuses by condominium developers, and many are designed to disclose information that purchasers should have." 18 WILLIAM B. STOEBUCK, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS § 11.13, at 41 (1995).
[9] See also William S. Ohlemeyer, The Uniform Condominium Act in Missouri, 49 Mo. L.REV. 595, 620 (1984). Discussing Missouri's version of the Uniform Condominium Act, Ohlemeyer states: "A non-affiliate successor ... is not liable for breaches of the declarant's warranties, even if he is selling a declarant's original units, but he does warrant his improvements or descriptions." Id.
[10] This court has stated that it is appropriate to consider "related statutes which disclose legislative intent about the provision in question" when attempting to ascertain the plain meaning of a statute. Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 11, 43 P.3d 4 (2002).
[11] RCW 4.22.070 governs the allocation of liability in tort actions involving fault by more than one party. In particular, RCW 4.22.070(1)(a) states: "A party shall be responsible for the fault of another person or for payment of the proportionate share of another party where both were acting in concert...."
[12] In a memorandum on HAL letterhead to Manheim and a member of the executive board of HAL's parent company, HAL Holdings N.V., Manheim's assistant refers to the profit as HAL's, stating: "Our net [on the OPT commercial units] after sales commissions, excise taxes, and other expenses was $2,807,188." CP at 838 (emphasis added).